**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 12-cv-02578-MSK**

**JESSE JUNIOR SIRIO,**

> **Plaintiff,**

**v.**

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

> **Defendant.**[1]

---

## OPINION AND ORDER AFFIRMING DECISION

---

**THIS MATTER** comes before the Court on Plaintiff Jesse Junior Sirio's appeal from the Commissioner of Social Security's final decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83c.  Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

### I.      Jurisdiction

On February 13, 2009, Mr. Sirio filed a claim for disability insurance benefits and supplemental security income pursuant to Titles II and XVI.  He asserted that his disability began on December 21, 2008.  His claim having been initially denied, Mr. Sirio filed a written request for a hearing before an Administrative Law Judge ("ALJ").  This request was granted and a

---

[1]  Michael J. Astrue was the Commissioner of Social Security at the time Mr. Sirio filed his appeal.  Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commissioner of Social Security, effective February 14, 2013.

hearing was held on April 15, 2011.  The ALJ issued a decision on May 13, 2011 in which he determined that Mr. Sirio was not under a disability from December 21, 2008 to the date of his decision.

The ALJ found that Mr. Sirio had severe impairments, including hypothyroidism, history of cerebral vascular accident ("CVA"), mood disorder, mild cognitive disorder secondary to amphetamine dependence now in remission, and personality disorder.  The ALJ further found that these impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  He found that Mr. Sirio had the Residual Functional Capacity ("RFC") to perform work-related activities with the following restrictions: he can lift and carry 25 pounds frequently and 50 pounds occasionally; is able to understand, remember, and carry out routine and repetitive, but not complex instructions; and is able to interact occasionally with supervisors and coworkers, but should not serve or interact with the public.  The ALJ found that Mr. Sirio was unable to perform any of his past relevant work, but that there were jobs in the national economy that Mr. Sirio would be able to perform given his age, education, work experience, and RFC.

Mr. Sirio requested review of the ALJ's decision. This request was denied by the Appeals Council on August 29, 2012, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).  The appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

## II.     Material Facts

Having reviewed the record in light of the issues raised, the material facts are as follows.

Mr. Sirio was 40 years old on the date he claims his disability began. He earned a high school equivalency diploma and an associate's degree, and previously worked as a bartender, ticket seller, telephone solicitor, service order dispatcher, substance abuse counselor, and waiter. He reported ongoing psychological problems and drug use beginning in his teenage years.

Mr. Sirio was evaluated in June 2008 by two psychologists, Drs. Coleman and Wachtel. Their report was not made available to the ALJ, but it was included in the materials presented to the Appeals Council and incorporated into the record. The report describes Mr. Sirio's psychological symptoms and preliminary diagnosis. The report states that he met the criteria for Bipolar I disorder (most recent episode mixed, moderate) and personality disorder (not otherwise specified, features of borderline and histrionic). The report also states that Mr. Sirio displayed fair social skills, stable mood and affect, and had some problems with attention, concentration, and distractibility; there were no problems with memory, cognitive processing, or mental confusion. The doctors gave him a Global Assessment of Functioning ("GAF") score of 65[2], indicating that he would benefit from a psychiatric evaluation and a trial period of medications.

The next month, in July 2008, Mr. Sirio began treatment at the Stout Street Clinic ("Clinic"). A nurse at the Clinic also initially evaluated Mr. Sirio's GAF at 65. Dr. Kosmicki served as Mr. Sirio's primary caregiver at that facility from July 2008 to January 2011. From July to November 2008, Mr. Sirio reported some anxiety, but appeared to respond well to medication (Lithium) as his mood remained stable and he had not suffered from any depressive

---

[2] GAF ratings are used by clinicians to assess an individual's overall level of functioning at one point in time. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. Text rev. 2000) (*DSM-IV*) at 32-34. A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

episodes.  A nurse rated Mr. Sirio's GAF at 40[3] in November.  In December 2008, he

demonstrated alert and oriented presentation with fair judgment and insight, and no psychosis.

Dr. Kosmicki rated his GAF at 45 during that visit.

In early February 2009, Dr. Kosmicki again rated Mr. Sirio's GAF at 45, while noting

some depression and re-prescribing Lithium.  After three weeks of treatment, the Doctor found

Mr. Sirio less depressed, having full affect and linear articulation and thinking.  Dr. Kosmicki's

GAF evaluation remained at 45, however.  Later, in March, Mr. Sirio appeared positive,

motivated, and calm, but in May 2009, he reported decreased energy and depression.  Dr.

Kosmicki rated him at 40.

Of note is the fact that Mr. Sirio was then evaluated by Dr. Sills, a consultative examiner,

on June 15, 2009.  Mr. Sirio reported that Lithium had significantly helped control his chronic

anger problems, and that his memory had improved since ceasing the use of illegal drugs.  Dr.

Sills noted that Mr. Sirio had good attention and concentration and rated his GAF at 65.  Dr. Sills

further noted that Mr. Sirio would have moderate difficulties in working with others, performing

detailed and repetitive tasks, and maintaining regular attendance, but the doctor expected

improvement in those areas with continued treatment.

By June 29, 2009, Mr. Sirio reported stabilized moods, good sleep, and higher energy and

motivation.  Dr. Kosmicki observed normal speech and connected thoughts, but rated Mr. Sirio's

GAF at 45.  The next month, July, his evaluation was a GAF of 40 after Mr. Sirio visited with

---

[3] A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *DSM-IV* at 34. A GAF rating between 31 and 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."  *Id.*

relatives for several days.  Doctor Kosmicki observed normal speech and logical, connected thoughts.

There were also two independent evaluations conducted in July 2009 related to Mr. Sirio's disability benefits application. A state agency psychiatrist, Dr. Ryan, evaluated Mr. Sirio's records.  She opined that he could do work of limited complexity that required less than three months to learn, could interact with supervisors so long as those interactions were not frequent or prolonged, and should have less interaction with coworkers and the public.  Also, Dr. Bush performed a physical evaluation on Mr. Sirio.  Dr. Bush indicated that Mr. Sirio could lift and carry 25 to 50 pounds frequently and had no limitations as to the number of hours that he could walk, stand, or sit during an eight hour workday.

Mr. Sirio did not return to the Clinic until October 2009, at which time Dr. Kosmicki assessed his GAF at 40.  Mr. Sirio reported his mood was stable and improved since before starting medications.  During subsequent visits that month, Mr. Sirio indicated some "ups and downs" but was mellow for the most part despite an outburst on Halloween.  He complained of forgetfulness, and then later said that his memory was improving.  By December 2009 and January 2010, Mr. Sirio said his mood was better but his GAF scores as rated by Dr. Kosmicki remained at 35 and 40 respectively.

Additionally, in December 2009 Dr. Kosmicki completed a Medical Source Statement (Mental) form ("MSSM form") which indicated Mr. Sirio was disabled and had difficulty concentrating and being around other people.  The Doctor evaluated 20 different limitations involving work-related abilities from "none" to "marked[4]".  The "marked" limitations related to the ability to get along with co-workers, to maintain concentration, and to set realistic goals or to

---

[4] "Marked" was defined on the MSSM form as "Serious limitations in this area.  The ability to function in this area is severely limited but not precluded."

make plans independently.  He rated Mr. Sirio's GAF at 45 and also indicated "moderate[5]"

limitations in stress management, in the ability to follow a schedule, in punctuality and

attendance, in social functioning, in concentration, and in persistence and pace.  Dr. Kosmicki

further indicated two episodes of decompensation (lasting two weeks or more) during the

previous year, though neither the basis for this opinion nor other evidence of those episodes

appears in the record.

In March and May 2010, Dr. Kosmicki rated Mr. Sirio's GAF at 45.  The Doctor's

observations for May were that Mr. Sirio was pleasant, had normal speech and logical, connected

thoughts.  Mr. Sirio stated he was not suffering from medication side effects.  In July, Mr. Sirio

said he had not suffered from any mania or severe depression and received a GAF rating of 40.

The September and November GAF scores were also 40.

In January 2011, Mr. Sirio said that he was depressed much of the time, but that his mood

was much better and did not fluctuate on his prior medication, Celexa. Dr. Kosmicki rated his

GAF at 45 and restarted the prior medication.

Finally, Dr. Podrygula testified at Mr. Sirio's administrative hearing in April 2011 after

evaluating the record.  He testified that Mr. Sirio had mild limitations in activities of daily living;

moderate limitations in social functioning; moderate limitations in concentration, persistence,

and pace; and had experienced no episodes of decompensation.  He further testified that the

record established diagnoses that included mood disorder, personality disorder, and

polysubstance abuse or dependence in remission.

Mr. Sirio also testified at the hearing and stated that the primary reason that he could not

work was his poor impulse control around people.  He offered examples of punching a computer

---

[5] "Moderate" was defined on the MSSM form as "Moderate limitations in this area, but still able
to occasionally perform this function (i.e., up to 1/3 of the day)."

screen, leaving every one of his previous jobs on bad terms, and difficulty completing

community service.  He also stated that he had difficulty focusing and suffered from fatigue.

A vocational expert also testified at the hearing and found that a person with Mr. Sirio's

age, education, background, past work experiences, and the RFC described above could not

perform the types of jobs previously held by Mr. Sirio.  There were jobs in the national economy,

however, that such a person could perform like working as a janitor or a dishwasher.

The ALJ found that Mr. Sirio had not been under a disability under the meaning of the

Social Security Act from December 2008 to May 2011.  Regarding his physical abilities, the ALJ

assigned substantial weight to the July 2009 consultative physical exam, the results of which

were essentially normal.  Regarding Mr. Sirio's mental abilities, the ALJ assigned only some

weight to the opinion of Dr. Kosmicki's December 2009 report because the "marked" limitations

were not supported by objective abnormalities documented in the treatment records nor in the

other examinations.  The ALJ assigned little weight to Dr. Kosmicki's other opinions for the

same reasons; the GAF scores of 35-45 were largely unsupported by the record, as were the two

instances of decompensation.  The ALJ assigned substantial weight to the June 2009 exam by

Dr. Sills because it was consistent with (1) the exam findings in the treatment records, (2) the

findings of the state agency medical consultant, Dr. Ryan, and (3) the findings of Dr. Podrygula

during the hearing.  Finally, the ALJ assigned only some weight to Mr. Sirio's testimony because

it was inconsistent with his treatment records, and therefore found the persuasiveness of Mr.

Sirio's subjective complaints and limitations diminished.

## III.    Issues Presented

Mr. Sirio raises three challenges to the Commissioner's decision.  He contends that:  (1)

the ALJ failed to adhere to the regulations when he did not base his evaluation of a treating

psychiatrist's opinion, and subsequent RFC determination, on substantial evidence; (2) the evidence presented to the Appeals Council was new and material and therefore required remand to the ALJ; and (3) the ALJ failed to base his findings regarding Mr. Sirio's credibility on substantial evidence.

### IV.    Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

A treating physician's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[6] An ALJ must give specific and legitimate reasons to reject a treating physician's opinion or give it less than controlling weight. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation

---

[6] Except as noted herein, all references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition. Hereafter, the Court will only cite the pertinent Title II regulations governing disability insurance benefits, found at 20 C.F.R. Part 404, e.g. § 404.1527. The corresponding regulations governing supplemental security income under Title XVI, which are substantively the same, are found at 20 C.F.R. Part 416.

omitted).  Even if a treating physician's opinion is not entitled to controlling weight, it is still

entitled to deference and must be weighed using the following factors:

> 1) the length of the treatment relationship and the frequency of examination;
> 2) the nature and extent of the treatment relationship, including the treatment
> provided and the kind of examination or testing performed; 3) the degree to which
> the physician's opinion is supported by relevant evidence; 4) consistency between
> the opinion and the record as a whole; 5) whether or not the physician is a
> specialist in the area upon which an opinion is rendered; and 6) other factors
> brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (citation omitted); § 404.1527.

Having considered these factors, an ALJ must give good reasons in the decision for the

weight assigned to a treating source's opinion.  § 404.1527(c)(2).  The ALJ is not required to

explicitly discuss all the factors outlined in § 404.1527.  *Oldham v. Astrue*, 509 F.3d 1254, 1258

(10th Cir. 2007).  However, the reasons the ALJ sets forth must be sufficiently specific to make

clear to subsequent reviewers the weight the ALJ gave to the treating source's medical opinions

and the reason for that weight.  *Watkins*, 350 F.3d at 1301.

In assessing subjective symptoms, an ALJ must consider statements of the claimant

relative to objective medical evidence and other evidence in the record.  § 404.1529(c)(4).  If a

claimant has a medically determinable impairment that could reasonably be expected to produce

the identified symptoms, then the ALJ must evaluate the intensity, severity, frequency, and

limiting effect of the symptoms on the claimant's ability to work.  § 404.1529(c)(1); SSR 96-7p.

In the Tenth Circuit, this analysis has three steps: 1) the ALJ must determine whether

there is a symptom-producing impairment established by objective medical evidence; 2) if so, the

ALJ must determine whether there is a "loose nexus" between the proven impairment and the

claimant's subjective symptoms; and 3) if so, the ALJ must determine whether considering all

the evidence, both objective and subjective, the claimant's symptoms are in fact disabling.  *Luna*

*v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[7]  The third step of the *Luna* analysis involves a

holistic review of the record.  The ALJ must consider pertinent evidence including a claimant's

history, medical signs, and laboratory findings, as well as statements from the claimant, medical

or nonmedical sources, or other persons.  § 404.1529(c)(1).  In addition, § 404.1529(c)(3)

instructs the ALJ to consider:

> 1) [t]he individual's daily activities; 2) [t]he location, duration, frequency, and
> intensity of the individual's pain or other symptoms; 3) [f]actors that precipitate
> and aggravate the symptoms; 4) [t]he type, dosage, effectiveness, and side effects
> of any medication the individual takes or has taken to alleviate pain or other
> symptoms; 5) [t]reatment, other than medication, the individual receives or has
> received for relief of pain or other symptoms; 6) [a]ny measures other than
> treatment the individual uses or has used to relieve pain or other symptoms…; and
> 7) [a]ny other factors concerning the individual's functional limitations and
> restrictions due to pain or other symptoms.

Inherent in this review is whether and to what degree there are conflicts between the

claimant's statements and the rest of the evidence.  *Id.*  Ultimately, the ALJ must make specific

evidentiary findings with regard to the existence, severity, frequency, and effect of the subjective

symptoms on the claimant's ability to work.  § 404.1529(c)(4).  This requires specific

evidentiary findings supported by substantial evidence.  *Huston v. Bowen*, 838 F.2d 1125, 1133

(10th Cir. 1988); *Diaz*, 898 F.2d at 777.

## V.    Discussion

### A.  Dr. Kosmicki's Opinion

The first issue concerns the ALJ's assessment of Dr. Kosmicki's opinions, and whether

by assigning "little" to "some" weight to them, the ALJ failed to base his RFC conclusion on

substantial evidence.  The law requires that the opinion of a treating physician be given

controlling weight when it is well supported and not inconsistent with other substantial evidence

---

[7]  The ALJ need not follow a rote process of evaluation, but must specify the evidence
considered and the weight given to it.  *Qualls v. Apfel*, 206 F3d 1368, 1372 (10th Cir. 2000).

of record. *Drapeau*, 255 F.3d at 1213; § 404.1527(c)(2). "Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations. . . ." *Krauser*, 638 F. 3d at 1330.

Mr. Sirio argues that the ALJ erred by not giving Dr. Kosmicki's opinion controlling weight. Dr. Kosmicki was a treating physician, and the ALJ gave his opinions "little" to "some" weight. To support this claim, Mr. Sirio points to examples of his depression, anger, and mental or emotional impairment as evidence that Dr. Kosmicki's opinions were consistent with substantial evidence in the record.

The Commissioner responds that while there is no dispute that Mr. Sirio had mood problems which caused limitations in his ability to work, the ALJ properly gave reduced weight to Dr. Kosmicki's opinions. First, Dr. Kosmicki's opinion that Mr. Sirio was "disabled" is a finding reserved to the Commissioner and thus properly rejected. Second, many of Dr. Kosmicki's opinions were inconsistent with substantial evidence of record: Mr. Sirio's specific limitations were not identified, nor were the opinions supported by examination findings; the opinions were inconsistent with the relatively minimal objective abnormalities; and the opinions were inconsistent with treatment notes indicating that Mr. Sirio's condition was improving. Also, the ALJ properly gave only "some" weight to the MSSM form because the statement was not supported by objective medical evidence from the records or by a consultant exam, nor was there explanation or evidentiary support for the two decompensation episodes. The Commissioner further points to contrary opinions from Drs. Sill and Podrygula as more consistent with the record.

The Court agrees with the Commissioner.  The ALJ applied the correct legal standard, and his decision is supported by substantial evidence.  A reasonable mind could accept as adequate the ALJ's decision to give reduced weight to Dr. Kosmicki's opinions, despite his status as a treating physician, because his opinions were inconsistent with other substantial evidence of record.

Dr. Kosmicki's GAF evaluations of 35-45 are incongruent with many of his objective evaluations and descriptions of Mr. Sirio, especially when the GAF calculations remain constant but the description in the treatment notes shows improvement.  Additionally, in both July 2008 and June 2009, other evaluators rated Mr. Sirio's GAF at 65, a score which is more consistent with the objective observations in the record.

Finally, both Drs. Sill and Podrygula found Mr. Sirio's impairments to be less severe than did Dr. Kosmicki.  In fact, Dr. Sill examined Mr. Sirio and noted full orientation, good attention and concentration, and variable and appropriate affect.  After noting Mr. Sirio's impairments, Dr. Sill opined that he had only "moderate" limitations in many of the same areas evaluated as "marked" by Dr. Kosmicki, and that Mr. Sirio would be able to perform work activities without special supervision.  Dr. Podrygula reviewed the full record, listened to Mr. Sirio's testimony, and then testified that Mr. Sirio suffered only from "mild" and "moderate" limitations.  Dr. Podrygula noted that Mr. Sirio appeared bright and articulate, and that his treatment records indicated a positive response to medication with a better stabilized mood.  Thus, the ALJ's decision to assign less weight to Dr. Kosmicki's opinions and more weight to Dr. Sill's and Dr. Podrygula's opinions when determining Mr. Sirio's RFC was supported by substantial evidence.

**B. Additional Evidence**

Mr. Sirio's second claim, that the evidence presented to the Appeals Council was new and material and therefore required remand to the ALJ, likewise fails.

Mr. Sirio submitted a June 2008 report by Drs. Coleman and Wachtel as additional evidence to the Appeals Council. The Council found the information did not provide a basis for changing the ALJ's decision. Mr. Sirio argues that Dr. Podrygula's expert testimony might have been different had this report been available to him at the hearing, and requests the Court to remand so that the ALJ can consider this evidence.

The Commissioner responds that the report does not undermine the substantial evidence supporting the ALJ's findings. First, the report is from June 2008, six months before Mr. Sirio claims the onset of disability. Because it does not relate to the time period in question, there is not a reasonable possibility that that it could have changed the outcome. Second, the report does not support Mr. Sirio's claim of disability. While it does reference some limitation in attention and concentration, it also indicates normal memory and cognitive processing, as well as a GAF of 65.

The Court agrees with the Commissioner. The report would not have changed the outcome below because it was not relevant to the time period in question. GAF scores assess an individual's level of functioning at a specific point time. A "snapshot" dated six months before the requested disability period was minimally relevant to the ALJ's disability determination. And had it been considered by Dr. Podrygula to the extent it was even minimally relevant, the GAF of 65 and the accompanying comments from the examining psychologists support his recommendation and the ALJ's resulting RFC determination. Thus, the Court finds that the June 2008 report does not undermine the substantial evidence supporting the ALJ's findings.

### C.  Mr. Sirio's Subjective Statements

Finally, Mr. Sirio claims that the ALJ failed to base his findings regarding Mr. Sirio's subjective statements regarding his symptoms on substantial evidence.  Mr. Sirio points to two parts of the ALJ's ruling as support.  The first involves the perceived side effects of medication, and the second involves the ALJ's characterization of one part of the medical records.  On the basis of these two alleged inconsistencies, Mr. Sirio requests the Court to find that the ALJ's credibility determination was not based on substantial evidence and to remand for an additional credibility assessment.

The Commissioner responds that Mr. Sirio's testimony did not support a finding of greater functional limitations, and that the ALJ's credibility assessment is both correct and entitled to deference.  The Commissioner refers to the many inconsistencies between Mr. Sirio's testimony and the record in support of its position, including the relatively minimal objective abnormalities in Mr. Sirio's medical records, Mr. Sirio's improved condition with treatment, Mr. Sirio's denial of experiencing medication side effects, and the conflicts between Mr. Sirio's statements and the opinions of medical personnel.

The Court agrees with the Commissioner.  "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F. 3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec. of Health & Human Servs.*, 898 F. 2d 774, 777 (10th Cir. 1990).  At no time did the ALJ indicate that Mr. Sirio was perfectly healthy.  To the contrary, the ALJ found that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully persuasive to the extent they are inconsistent with the

14

[RFC assessment]." The medical records indicated some objective abnormalities, but not the extent testified to by Mr. Sirio. Mr. Sirio's condition did improve with treatment, and he did deny experiencing medication side effects. Finally, Mr. Sirio's characterizations of the severity of his symptoms during the hearing differed from the opinions of medical personnel, and in fact at points differed from his subjective comments recorded by medical personnel during the alleged disability period. Thus, there is substantial evidence for the ALJ's credibility determination. A reasonable mind could accept as adequate the ALJ's decision to give reduced weight to Mr. Sirio's testimony. The Court does not, therefore, upset the ALJ's credibility determination.

For the forgoing reasons, the Commissioner of Social Security's decision is **AFFIRMED**. The Clerk shall enter a Judgment in accordance herewith. Any request for costs or attorney fees shall be made within 14 days of the date of this Opinion, Order, and Judgment.

Dated this 24th day of August, 2013.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge